IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,          :
                                   :
            Plaintiff,             :
                                   :
        v.                         :   Criminal Action No. 07-19-JJF
                                   :
MARIO WOODING,                     :
                                   :
            Defendant.             :
                                   :

---

Colm F. Connolly, United States Attorney, and Edmond Falgowski, Esquire, Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.

Attorney for Plaintiff.

Edson A. Bostic, Esquire, Federal Public Defender, and Tieffa N. Harper, Esquire, Research & Writing Attorney of the FEDERAL PUBLIC DEFENDER'S OFFICE, Wilmington, Delaware.

Attorney for Defendant.

---

**MEMORANDUM OPINION**

January 10, 2008
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is Defendant's Motion To Suppress Physical Evidence And Statements (D.I. 16). For the reasons discussed the Court will deny the Motion.

I. **BACKGROUND**

On February 6, 2007, Defendant, Mario Wooding, was indicted on charges of knowingly possessing a mixture of heroin, a controlled substance, with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1); knowingly possessing a firearm in furtherance of drug trafficking to wit, possession of heroin with the intent to distribute it in violation of 18 § U.S.C. 942(c)(1) and (b)(1)(c), and knowingly possessing a firearm that has been transported in interstate commerce to Delaware in violation of 18 U.S.C. §§ 922(g)(1) and 942(a)(2). On April 16, 2007, Mr. Wooding filed the instant Motion To Suppress Physical Evidence And Statements contending that the warrantless search of his girlfriend's home was illegal and the statements he made to law enforcement officials during or after the search violated his Miranda rights. The Court conducted an evidentiary hearing on June 14, 2007, and the parties subsequently filed additional briefing on the issues raised at the hearing.

In the briefing that followed the hearing, Mr. Wooding abandoned his argument related to the seizure of physical

1

evidence from his girlfriend's house. (D.I. 32 at n.1.) Therefore, Mr. Wooding's sole argument for suppression relates to the statements he made to law enforcement officials. Specifically, Mr. Wooding contends that he did not voluntarily, knowingly, or intelligently waive his <u>Miranda</u> rights, and therefore, any statements he made to law enforcement officials should be suppressed.

**II. FINDINGS OF FACT**

1. At approximately 8:15 a.m. on January 8, 2007, Emergency Medical Technician Donald Moore and Christopher Ginn responded to an emergency 911 call requesting medical assistance for an unknown medical problem at a residence on East 10th Street, Wilmington, Delaware. (Tr. 6-7.) The 911 caller did not describe the nature of the medical problem or the name of the person affected, and therefore, responding personnel were unable to classify the specific medical need required for the response. (<u>Id.</u> at 7.)

2. Officer Daniel Burton of the Wilmington Police also responded to the scene to ensure the call represented an actual medical emergency and to ensure the safety of the EMTs. (<u>Id.</u> at 7-8.)

3. A 30-35 year old woman opened the door and told the EMTs that "he" was upstairs. (<u>Id.</u> at 10.) The EMTs proceeded upstairs where a second woman in her early twenties directed them

2

to the front bedroom.  (Id. at 11.)

    4.    The EMTs found Mr. Wooding in a t-shirt and boxer shorts lying on the floor on a sheet that was on top of a piece of foam.  Mr. Wooding was covered by a second sheet.  A pair of jeans was next to the foam, and a male's work boots were a few feet away.  The bedroom lacked any furnishings, and other than the above identified items, was empty.  (Id. at 12-13, 46-48.)

    5.    Although Mr. Wooding was looking around with his eyes open, he was unresponsive to the EMTs' questions.  (Id. at 14.) The EMTs assessed Mr. Woodings' vital signs and mental state and determined that Mr. Wooding was in a postictal state, a condition that typically follows a seizure.  (Id.)  According to EMT Moore, a postictal state is a state where one's mental status is altered due to a lack of oxygen to the brain.  The person's eyes may be open and they may be looking around the room, but the person cannot comprehend the circumstances or respond to any commands. (Id. at 14-15.)

    6.    The EMTs placed Mr. Wooding on oxygen and asked the women in the room for any information regarding the man and his condition.  The women did not respond, so the EMTs went into his pants pocket to try to find any medical cards or other information regarding his identity and condition.  EMT Moore then noticed a cell phone antenna sticking out of the top of one of the work boots, so he looked in the boots.  He discovered a cell

3

phone and a handgun which he brought to the attention of Officer Burton. EMT Moore continued to look for information about Mr. Wooding's identity and medical condition and poured out the contents of the other boot. Nineteen bags of heroin fell out. (Id. at 15-20.)

7. During EMT's Moore's search for Mr. Wooding's identity and medical history, Mr. Wooding's girlfriend left the bedroom and called Mr. Wooding's mother to ask for his last name. Mr. Wooding's mother told the girlfriend his name and explained that Mr. Wooding had been to the hospital the previous evening. (Id. at 21.)

8. Once Officer Burton learned Mr. Wooding's identity, he discovered that there were three outstanding warrants for his arrest. (Id. at 51.)

9. After receiving oxygen, Mr. Wooding emerged from the postictal state and began to communicate with the EMTs. Mr. Wooding told the EMTs that he had abused cough syrup the night before to get high and that he had experienced a seizure. He went to the hospital and was told that the seizures would continue until the cough syrup was out of his system. He was then discharged. Mr. Wooding also told the EMTs that he did not want to go to the hospital. (Id. at 22-23.)

10. The EMTS examined Mr. Wooding and determined that he was "[c]onscious, alert and oriented times four." EMT Moore

explained that this means that Mr. Wooding "knows who he is, he knows where he is and he knows when it is and he is aware of his situation." (Id. at 22.)

11. After clearing Mr. Wooding, the EMTs left the scene. Officer Burton remained behind. (Id. at 24.)

12. Officer Burton then informed Mr. Wooding that he was under arrest for the three outstanding warrants. Mr. Wooding was taken into custody and placed in the patrol car. Mr. Wooding was calm at all times. (Id. at 52.)

13. As Officer Burton was escorting Mr. Wooding to the patrol car, Mr. Wooding's mother arrived. Officer Burton waited for a minute at the curb to let Mr. Wooding speak to his mother. Officer Burton then transported Mr. Wooding to the police station. (Id. at 58-59.)

14. At the police station, Mr. Wooding was escorted to an interview room and read his Miranda rights verbatim from a card as follows:

> 1. You have the right to remain silent.
>
> 2. If you give up that right to remain silent, anything that you say can be used against you in a court of law.
>
> 3. You have the right to talk to a lawyer before any questioning and to have an attorney with you during questioning.
>
> 4. If you cannot afford an attorney, the court will appoint an attorney for you free of charge.
>
> 5. If you start answering questions, you

5

    may stop answering questions at any time.

    6. Do you understand these rights that I have just explained to you?

    7. Do you voluntarily waive these rights?

    8. Are you willing to voluntarily answer my questions?

(Id. at 53-55.)

  15. Mr. Wooding did not ask for any rephrasing or explanation of his Miranda warnings and appeared to understand them. Mr. Wooding was alert and attentive while his rights were read. Mr. Wooding responded affirmatively that he wanted to answer Officer Burton's questions. (Id. at 54-56.) Then Mr. Wooding told Officer Burton that the drugs found in his boot belonged to him and that he sold them. He also stated that the gun belonged to him and was used for his protection. (Id. at 55.)

  16. There was no language barrier between Mr. Wooding and Officer Burton. Mr. Wooding did not express any mental or physical discomfort or pain and did not require Officer Burton to repeat or rephrase any questions posed to him. Mr. Wooding was coherent and lucid at all times during his interview with Officer Burton, and was not encouraged or coerced to answer any questions. (Id. at 56.)

6

## III. CONCLUSIONS OF LAW

17. The Fifth Amendment to the United States Constitution provides that "no person ... shall be compelled in any criminal case to be a witness against himself. . . ." In <u>Miranda v. Arizona</u>, the Supreme Court held that:

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform the accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

384 U.S. 436, 444-45 (1966).

18. It is the Government's burden, in accord with <u>Miranda</u> and its progeny, to establish that a defendant's waiver of his <u>Miranda</u> rights was voluntary, knowing and intelligent. To be voluntary, the defendant's waiver must be the product of a free and deliberate choice rather than the result of intimidation, coercion or deception. To be knowing and intelligent, the defendant's waiver must be made with a full awareness of both the

7

nature of the rights being abandoned and the consequences of the decision to abandon them.

19. The Constitution does not require a suspect to know and understand every possible consequence of the waiver of his Miranda rights. Colorado v. Spring, 479 U.S. 564 (1987). Rather, a defendant must be informed of the "pertinent consequence" that the Government will use the information provided by him in order to secure a conviction. Miranda, 384 U.S. at 469.

20. To assess the validity of a waiver, it is necessary to look at the totality of the circumstances. Arizona v. Fulminante, 499 U.S. 279 (1991). A court should look to the particular facts of a given case, including the defendant's background, experience and conduct. United States v. Velasquez, 885 F.2d 1076, 1086 (3d Cir. 1989). Also relevant in assessing the voluntariness of a confession are such factors as the defendant's age, education, intelligence, mental health, drug use, and prior experience with the criminal justice system, as well as the length of his detention, whether the questioning was repeated or prolonged and whether the defendant was subject to physical punishment such as the deprivation of food or sleep. See e.g., United States v. Jacobs, 431 F.3d 99, 108 (3d Cir. 2005); Miller v. Benton, 796 F.2d 598, 604 (3d Cir. 1986).

8

21. An express written statement of a waiver is strong proof as to the validity of a waiver. A waiver may also be made orally or implied from the defendant's conduct. North Carolina v. Butler, 441 U.S. 369, 373 (1979).

22. The Government must prove the waiver of a Defendant's Miranda rights by a preponderance of the evidence. See Colorado v. Connelly, 479 U.S. 157, 168 (1986).

23. Mr. Wooding contends that he did not knowingly, voluntarily and intelligently waive his Miranda rights because he had a seizure the night before and the day of his arrest. In light of his ongoing medical condition, Mr. Wooding also contends that he should have been provided with a written Miranda statement. Mr. Wooding further contends that Officer Burton should have video or audio recorded his interview with him to demonstrate that the Miranda warnings were given and that Mr. Wooding was lucid and coherent at the time the warnings were given.

24. After reviewing the totality of the circumstances in this case, the Court concludes that the Government has established by a preponderance of the evidence that Mr. Wooding knowingly, intelligently and voluntarily waived his Miranda rights and gave a voluntary confession to Office Burton. In reaching this conclusion, the Court credits the testimony of EMT Moore, a trained paramedic with twelve years experience. EMT

Moore was disinterested in any criminal conduct by Mr. Wooding and maintained as his sole focus, the condition of Mr. Wooding's health. EMT Moore examined Mr. Wooding at the scene and applied the test for cognitive functioning to determine that Mr. Wooding had emerged from his postictal state and was "[c]onscious, alert and oriented times four, he knows who he is, he knows where he is and he knows when it is and he is aware of his situation." (Tr. 22.)

25. In addition, the Court credits the testimony of Officer Burton and concludes that the circumstances of his arrest and interview were consistent with the findings of EMT Moore. Mr. Wooding did not ask for clarification of his Miranda warnings and voluntarily expressed that he wished to answer Officer Burton's questions. He was coherent and lucid during his interview which further supports the Court's conclusion that he was fully capable of waiving his Miranda rights. See e.g., United States v. Harper, 466 F.3d 634, 643-644 (8th Cir. 2006) (upholding district court's findings that defendant validly waived Miranda rights where he regained consciousness following auto accident, was alert and responsive during questioning and did not complain of injuries).

26. The Court notes that Mr. Wooding relies primarily on the testimony of Diana Nakirigan, a nurse at Gander Hill prison, who examined Mr. Wooding upon arrival, with regard to the

contention that he was not able to knowingly, voluntarily and intelligently waive his <u>Miranda</u> rights. (Tr. at 85-92.) Nurse Nakirigan testified that Mr. Wooding was agitated, she did not testify that he was incoherent. To the contrary, Nurse Nakirigan testified that Mr. Wooding did not express any confusion and knew where he was. Accordingly, the Court concludes that the totality of the circumstances surrounding the time that Mr. Wooding was given his <u>Miranda</u> warnings and interviewed by Officer Burton demonstrate that Mr. Wooding validly waived his <u>Miranda</u> rights.

## IV. CONCLUSION

For the reasons discussed, the Court will deny Mr. Wooding's Motion To Suppress Physical Evidence And Statements.

An appropriate Order will be entered.

11